No. 25-2340

# United States Court of Appeals
# for the Third Circuit

THOMAS WOOD,

*Plaintiff-Appellant,*

v.

EIAZUIKS, ET AL.,

*Defendants.*

On Appeal from the United States District Court
for the Western District of Pennsylvania
No. 25-cv-309 (Hon. J. Nicholas Ranjan)

**BRIEF AND APPENDIX FOR PLAINTIFF-APPELLANT
VOLUME I OF II (Pages Appx1-Appx9)**

Stanley D. Ference III
FERENCE & ASSOCIATES LLC
409 Broad Street
Pittsburgh, Pennsylvania 15143
(412) 741-8400
courts@ferencelaw.com

*Attorneys for Plaintiff-Appellant
  Thomas Wood*

November 13, 2025

## CORPORATE DISCLOSURE STATEMENT

Plaintiff-Appellant Thomas Wood is a natural person.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES ...................................................................v

INTRODUCTION ...........................................................................1

JURISDICTIONAL STATEMENT ...............................................................2

ISSUES PRESENTED .......................................................................5

STATEMENT OF RELATED CASES .............................................................5

STATEMENT OF THE CASE ..................................................................6

SUMMARY OF ARGUMENT ...................................................................8

STANDARD OF REVIEW ...................................................................10

ARGUMENT .............................................................................11

   I.  The District Court Erred as a Matter of law in Concluding There was a Lack of Personal Jurisdiction Despite the Allegations of Defendants' Actual Sales in Wood's Complaint. ..............................................12

      A.  The Court may Exercise Personal Jurisdiction Over Defendants Authorized by the Constitution and Pursuant to 42 Pa. Cons. Stat. § 5322 ...................................................................14

      B.  The Available Caselaw Authorizes an Exercise of Personal Jurisdiction Over Sellers who use Online Marketplaces to sell Infringing Products to Consumers Within the Forum State. ....................................16

      C.  Wood's Allegations of Actual Sales to Pennsylvania Consumers are Sufficient to Support Personal Jurisdiction. ...........................22

   II.  The District Court Abused its Discretion by Restricting the Joinder of Defendants Based on Categorical Generalizations Rather Than on a Case-By-Case Basis. ..................................................................25

A. The Factual Allegations of Defendants' Coordinated and Cooperative Efforts to Create a Secondary Infringing Marketplace as Alleged in the Complaint Amount to a Series of Transactions or Occurrences Sufficient to Join Defendants Under Rule 20(a)(1)(A)...........................28

B. Common Questions of law and Shared Operative Facts will Arise as to all Defendants in the Action as is Required by Rule 20(a)(1)(B). .......................................................................................32

C. Allowing Wood to Join all 54 Defendants in one Action is not Only Permissible but Should be Preferred to Promote Convenience and Judicial Economy ......................................................................................33

CONCLUSION .........................................................................................................36

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Girl, LLC v. Zembrka,*
118 F.4th 271 (2d Cir. 2024), *cert. denied,* 145 S. Ct. 1130 (2025) ........ 9, 14, 20

*Aquapaw Brands LLC v. Fed Store,*
23-CV-01460 (W.D. Pa. 2025)..............................................................36

*Asahi Metal Indus. Co., Ltd. v. Superior Court of California,*
480 U.S. 102 (1987).................................................................................16

*BGSD, Inc. v. SpazeUp, LLC,*
2024 WL 1619279 (E.D. Pa. Apr. 15, 2024) ......................................22

*Bose Corp. v. P'ships and Unincorporated Ass'ns Identified on Schedule "A,"* 334
F.R.D. 511 (N.D. Ill. 2020) .......................................................... 27, 32

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462, 475 (1985)........................................................................16

*Chen v. Adediy,*
2025 WL 1146534 (W.D. Pa. March 5, 2025)....................................21

*Danvers Motor Co., Inc. v. Ford Motor Co.,*
543 F.3d 141 (3d Cir. 2008) ................................................................10

*De Sousa v. Moon Bay,*
No. 24-cv-1518 (W.D. Pa. 2024).........................................................37

*Doggie Dental, Inc. v. CDOFFICE,*
21-CV-00271 (W.D. Pa. 2021)............................................................34

*Est. of Ware v. Hosp. of the U. of Pennsylvania,*
871 F.3d 273 (3d Cir. 2017)................................................................26

*Estee Lauder Cosmetics Ltd. v. Partnerships and Unincorporated Associations
Identified on Sched. A,*
334 F.R.D. 182 (N.D. Ill. 2020) .........................................................32

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
    592 U.S. 351 (2021).........................................................................16

*Gentex Corp v. Abbott*,
    978 F. Supp. 2d 391 (M.D. Pa. 2013) ...........................................15

*Goodyear Dunlop Tires Ops., S.A. v. Brown*,
    564 U.S. 915 (2011)........................................................................15

*Gulfstream Aerospace Corp. v. Mayacamas Corp.*,
    485 U.S. 271 (1988).........................................................................4

*Hagan v. Rogers*,
    570 F.3d 146 (3d Cir. 2009)..........................................9, 10, 11, 27

*Hammons v. Ethicon*, Inc.,
    240 A.3d 537 (Pa. 2020) ...............................................................15

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
    72 F.4th 1085 (9th Cir. 2023)......................................... 9, 14, 18, 24

*In re Enter. Rent-A-Car Wage & Hour Empl. Practices Litig.*,
    735 F. Supp. 2d 277 (W.D. Pa. 2010), *aff'd*, 683 F.3d 462 (3d Cir. 2012) .........10

*Loewe S.A., Inc. v. P'ships and Unincorporated Ass'ns Identified on Schedule "A,"*
    20-cv-07185 (N.D. Ill. Dec. 18, 2020) ...........................................27

*Louis Vuitton Malletier, S.A. v. Mosseri*,
    736 F.3d 1339 (11th Cir. 2013.)................................................ 14, 19

*Marten v. Godwin*,
    499 F.3d 290 (3d Cir. 2007).................................................... 14, 15

*Merch Traffic, LLC v. The Partnerships and Unincorporated Associations Identified on Schedule A*,
    25-cv-1180 (N.D. Ill. Apr. 17, 2025) ..............................................36

*Miller Yacht Sales, Inc. v. Smith*,
    384 F.3d 93 (3d Cir. 2004). .............................................................11

*NBA Props. v. HANWJH*,
    46 F.4th 614 (7th Cir. 2022), *cert. denied,* 143 S. Ct. 577 (2023).............. 14, 19

*Nifty Home Products, Inc. v. Laylaxy*,
 23-CV-00903 (W.D. Pa. 2023) ............................................................. 36

*Oakley, Inc. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A,"*
 20-cv-05972 (N.D. Ill. Nov. 9, 2020) ...................................................... 27

*Phillips v. Cnty. of Allegheny*,
 515 F.3d 224 (3d Cir. 2008) ................................................................... 8

*Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*,
 819 F.2d 434 (3d Cir. 1987) ................................................................. 14

*Renner v. Lanard Toys*,
 33 F.3d 277 (3d Cir. 1994) ................................................................... 14

*Rolo v. Gen. Dev. Corp.*,
 949 F.2d 695 (3d Cir. 1991) ................................................................... 4

*Shu v. Grand Di*, No. 24-cv-1643 (W.D. Pa. Apr. 11, 2025) ..................... 21

*Talisman Designs, LLC v. Dasani*,
 20-cv-1084 (W.D. Pa. Oct. 13, 2020). .................................................. 20

*Tanya Paget v. Amxyfbk*,
 25-cv-1106 (W.D. Pa. 2025) ................................................................. 37

*Toys "R" Us, Inc. v. Step Two, S.A.*,
 318 F.3d 446 (3d Cir. 2003) ................................................................. 17

*Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*,
 292 F.3d 384 (3d Cir. 2002) ................................................................. 27

*Unique v. Claybaugh*, 712 F. Supp. 3d 1265, 1269 (N.D. Cal. 2024) ..................... 27

*United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 724 (1966) ..................... 11, 26

*Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co.*,
 75 F.3d 147 (3d Cir. 1996) ................................................... 10, 14, 15

*Weber v. McGrogan*,
 939 F.3d 232 (3d Cir. 2019) ............................................................. 3, 5

*World–Wide Volkswagen Corp. v. Woodson*,
 444 U.S. 286 (1980) ............................................................................. 17

*Zhang v. AAGGO,*
    2025 WL 1158909 (W.D. Pa. Apr. 21, 2025)........................................22

**Statutes**

17 U.S.C. § 101 ...................................................................................3

17 U.S.C. § 501(a) ...........................................................................12

17 U.S.C. § 106(5) ...........................................................................13

28 U.S.C. § 1292 ...........................................................................3, 4

28 U.S.C. § 1331 ...............................................................................3

28 U.S.C. §§ 1338(a) (b)...................................................................3

42 Pa. Cons. Stat. § 5322(b) ...........................................................15

**Rules**

Fed. R. Civ. P. 11...................................................................... 13, 24

Fed. R. Civ. P. 20.................................................................. 26, 34, 35

Fed. R. Civ. P. 4(e) ..........................................................................14

## **INTRODUCTION**

Thomas Conrad Wood ("Wood") is a well-known and versatile artist with a career spanning more than 30 years. He has distributed his artwork throughout the United States and Europe through hundreds of published art prints and licensed products, many commissioned works for private individuals, and hundreds of postage stamps for more than dozen countries. He has also taught college courses on art design and has designed textile goods for mass market retailers such as Walmart, Kohls, and Kmart.

To combat the swarms of infringers reproducing the his copyrighted works, Wood filed a lawsuit against 54 online sellers on the Amazon, Walmart, and Temu online marketplaces who were infringing his copyrighted materials, seeking both a temporary restraining order and a preliminary injunction as well as a permanent injunction and damages. The District Court denied Wood's request for a temporary restraining order and ordered him to show cause why the case should not be severed, offering him the alternative to file an amended complaint. Following Wood's submission of a response to the show cause order, the District Court entered a "Schedule A" Case Standing Order (the "Standing Order") and another text only order dismissing Wood's Complaint and granting leave to re-file the Complaint consistent with the Standing Order. Wood elected not to amend his Complaint and instead filed this appeal.

Although the Standing Order contains numerous problematic provisions, this appeal challenges only two aspects: the District Court's application in this case of the provisions in the Standing Order pertaining to personal jurisdiction and joinder. With respect to personal jurisdiction, the District Court erred as a matter of law in finding that allegations in the Complaint of actual sales of infringing products to Pennsylvania customers are insufficient to support personal jurisdiction. With respect to joinder, the District Court abused its discretion when it held that Wood had improperly joined the defendants based solely on categorical generalizations and without considering the facts alleged in the Complaint. Accordingly, Wood respectfully requests that this Court vacate the District Court's dismissal and remand for reconsideration consistent with the Court's precedent.

## JURISDICTIONAL STATEMENT

Wood appeals from the District Court's *sua sponte* dismissal of this case for lack of personal jurisdiction and improper joinder predicated on the Standing Order. The District Court had original subject-matter jurisdiction over the claims in this action pursuant to the provisions of the Federal Copyright Act, 17 U.S.C. § 101, et seq., 28 U.S.C. §§ 1338(a) (b), and 28 U.S.C. § 1331.

The District Court dismissed this case without prejudice "consistent with the Standing Order," granting Wood leave to amend his Complaint to bring it into

compliance with the Standing Order. Because the Standing Order contains provisions that rendered it impossible for Wood to amend his Complaint in a manner that would comply with the Standing Order, Wood elected to forgo amendment and "stand on" his Complaint, rendering the order final. *Weber v. McGrogan*, 939 F.3d 232, 240 (3d Cir. 2019) ("a clear and unequivocal intent to decline amendment and immediately appeal that leaves no doubt or ambiguity can allow us to exercise jurisdiction.").

Moreover, the courts of appeals have jurisdiction of appeals from "[i]nterlocutory orders of the district courts of the United States ... granting, continuing, modifying, refusing or dissolving injunctions." 28 U.S.C. § 1292. Although jurisdiction ordinarily encompasses only interim appeals of rulings granting or denying preliminary injunctions, the Supreme Court has extended this jurisdiction to include the review of "orders that have the practical effect of granting or denying injunctions and have 'serious, perhaps irreparable, consequence.'" *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 287–88 (1988) (citing *Carson v. American Brands, Inc.*, 450 U.S. 79, 83, 101 S. Ct. 993, 996, 67 L. Ed. 2d 59 (1981)).

In *Rolo v. Gen. Dev. Corp.*, 949 F.2d 695, 703 (3d Cir. 1991), this Court held that an order deferring consideration of a preliminary injunction to prevent the defendants from liquidating or transferring their assets was immediately appealable

because even though the order did not expressly refuse the preliminary injunction, it had the practical effect of doing so. The plaintiff presented evidence that the defendants were actively liquidating and distributing assets, such that the district court's deferral of consideration of the plaintiff's motion was effectively a denial of the motion likely to result in serious or irreparable harm. *Id.*

As in *Rolo,* the District Court's order denying Wood's motion for a TRO had the effect of denying the preliminary injunction and had serious or irreparable consequences, making it appealable under 28 U.S.C. § 1292. A critical aspect of Wood's request for a TRO and preliminary injunction was his request that the Defendants' assets be frozen prior to their receipt of notice of the lawsuit. The record before the District Court established that, without such a restraint, the defendants were likely to withdraw the funds from their accounts and transfer them to jurisdictions outside the reach of the court as soon as they were aware of the action, thus preventing Wood from collecting any judgment rendered against them. (Appx31-32; 48).

Accordingly, Wood can only obtain meaningful injunctive relief to preserve assets for eventual recovery if he can obtain an *ex parte* asset freeze. Rule 65 authorizes *ex parte* TROs but does not authorize *ex parte* preliminary injunctions. Therefore, because the Defendants would receive prior notice of a motion for a preliminary injunction and would thus have an opportunity to move and hide their

assets, the District Court's denial of Wood's motion for a TRO effectively denied his request for a preliminary injunction and is therefore immediately appealable.

In sum, this Court's jurisdiction over this appeal is two-fold. First, the order dismissing the Complaint is a final and thus appealable order because Wood elected to stand on his Complaint. *Weber*, 939 F.3d at 237–41. Second, the District Court's order denying Wood's motion for a TRO effectively denied Wood's motion for a preliminary injunction and is therefore immediately appealable under § 1292.

## ISSUES PRESENTED

1.    Whether the District Court erred in dismissing the case for lack of personal jurisdiction despite allegations in the Complaint of actual sales of infringing products in the forum state?

2.    Whether the District Court abused its discretion by restricting Wood's use of joinder based solely on the Standing Order without regard to the allegations set forth in the Complaint?

## STATEMENT OF RELATED CASES

This case has not previously been before this Court. Wood is unaware of any other case or proceeding that is in any way related to this case, whether completed, pending, or about to be presented before this court or any other court or agency, state or federal. There are no cases pending in any

court or agency that will directly affect or be directly affected by the Third

Circuit's decision in this appeal.

## STATEMENT OF THE CASE

Wood is an acclaimed artist and the owner of several federal copyright

registrations that protect the creative content of his many works of art.[1]

(Appx22). Wood derives significant profits from the sale and distribution of

art prints and licensed products featuring his extensive portfolio, which

includes paintings of pet images, landscapes, and wine. (*Id*. ¶ 7).

Each of the Defendants operates a storefront on the Amazon, Walmart,

and/or Temu online marketplaces which advertises, sells, and ships products

that infringe upon Wood's copyrights. (Appx14). Prior to the filing of this

action, Wood, or someone working under his direction, investigated the

storefronts and determined that each Defendant was offering to sell and ship

the infringing products to customers located in Pennsylvania. (Appx40 ¶ 9).

On June 12, 2025, in an effort to thwart the ongoing mass piracy of

his copyrighted works, Wood filed his lawsuit for copyright infringement

---

[1] Wood is the owner of United States Copyright Registration Nos. VA 2-423-367, VA 2-423-412, VA 2-423-348, VA 2-423-274, VA 2-423-277, VA 2-423-390, VA 2-423-197, VA 2-423-345, VA 2-423-368, and VA 2-423-358 (collectively the "Thomas Wood Works"). These registrations are valid, subsisting, and in full force and effect. (Appx22 ¶ 9).

against the 54 Defendants listed in the Schedule A attached to the Complaint in the United States District Court for the Western District of Pennsylvania. (Appx14-37). Alongside the Complaint, Wood filed motions seeking a temporary restraining order, a restraint of Defendants' assets and merchant storefronts, an order to show cause why a preliminary injunction should not issue, and expedited discovery. Wood supported these motions with three declarations and a memorandum of law, all of which explained the irreparable harm that this online piracy ring was causing to Wood and the methods by which the Defendants were operating their counterfeiting businesses. (Appx38-54). On June 13, 2025, the District Court denied Wood's motions for injunctive relief and ordered him to show cause why the case should not be severed, offering him, in the alternative, leave to file an amended complaint. (Appx55-56).

On June 30, 2025, Wood responded to the show cause order with supplemental evidence of the factual overlap and underlying connections between the Defendants' e-commerce stores supported by the declaration of Stanley D. Ference III. (Appx57-206). On July 3, 2025, the District Court entered the Standing Order, which addressed issues common to this category of litigation, and another text only order dismissing Wood's Complaint and granting leave to re-file the Complaint consistent with the Standing Order.

(Appx1-7). Wood elected not to amend his Complaint and instead filed this appeal on July 14, 2025. (Appx9).

## SUMMARY OF ARGUMENT

The District Court both erred as a matter of law and abused its discretion in its dismissal of Wood's Complaint based on its Standing Order. Although the Standing Order contains numerous problematic provisions, this appeal challenges the District Court's application of two of those provisions in this action.

First, the District Court's application of the Standing Order's provisions regarding personal jurisdiction over the Defendants, without regard for the allegations in the Complaint, was erroneous as a matter of law. Wood's Complaint alleges that each Defendant made actual sales of infringing products to Pennsylvania customers. (Appx14-32 at ¶¶ 4, 24, 25, 33, and 34). The Complaint further describes the investigation of counsel for Wood that confirmed the Defendants' willingness to ship infringing products to Pennsylvania customers. (Appx27 ¶17). Because the Defendants did not appear and present evidence regarding personal jurisdiction, these allegations in the Complaint are accepted as true at this stage. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

Although the courts are split as to certain nuances of personal jurisdiction in Schedule A cases, no court has found personal jurisdiction lacking when the defendant has made actual sales of infringing products into the forum state. *See, e.g., American Girl, LLC v. Zembrka,* 118 F.4th 271 (2d Cir. 2024), *cert. denied,* 145 S. Ct. 1130 (2025); *Herbal Brands, Inc. v. Photoplaza, Inc.,* 72 F.4th 1085 (9th Cir. 2023). Here, however, the District Court dismissed the action for lack of personal jurisdiction without referencing or discussing the allegations in the Complaint, in contravention of this established case law.

Second, the District Court abused its discretion in applying Rule 20 of the Federal Rules of Civil Procedure to require that each complaint only "consist of a single defendant or group of defendants acting under a single operator," without regard to the factual circumstances underlying each claim. (Appx3). This Court has expressly held that courts deciding issues of joinder cannot rely on general assumptions and must base their analysis on the factual circumstances of each case. *See, e.g., Hagan v. Rogers*, 570 F.3d 146, 157 (3d Cir. 2009) ("In exercising its discretion [under Rule 20], the district court must provide a reasoned analysis that comports with the requirements of the Rule, and that is based on the specific fact pattern

presented by the plaintiffs and claims before the court. It is insufficient for a court to rely on general assumptions").

## STANDARD OF REVIEW

This Court reviews a dismissal for lack of personal jurisdiction *de novo*. *See Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co., 75* F.3d 147, 150 (3d Cir. 1996). Where, as here, the District Court decides the issue of personal jurisdiction without conducting an evidentiary hearing, a plaintiff "need only make a prima facie showing of jurisdictional facts." *Id*. In evaluating whether the plaintiff made a prima facie showing of personal jurisdiction, the District Court is required to take all of the plaintiff's factual averments as true and to draw all reasonable inferences in the light most favorable to the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008); *In re Enter. Rent-A-Car Wage & Hour Empl. Practices Litig.*, 735 F. Supp. 2d 277, 307 (W.D. Pa. 2010), *aff'd*, 683 F.3d 462 (3d Cir. 2012).

This Court reviews a finding of improper joinder for abuse of discretion. *Hagan v. Rogers*, 570 F.3d 146, 152 (3d Cir. 2009). A district court abuses its discretion when "its decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Danvers Motor Co., Inc. v. Ford Motor Co.,* 543 F.3d 141, 147 (3d

Cir. 2008) (cleaned up). When applying Rule 20, the court should allow the "broadest possible scope of action consistent with fairness to the parties." *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 724 (1966). If the court finds joinder improper, it "must provide a reasoned analysis that comports with the requirements of the Rule, and that is based on the specific fact pattern presented by the claims before the court." *Hagan,* 570 F.3d at 157 (3d Cir. 2009).

## ARGUMENT

The District Court abused its discretion in dismissing Wood's Complaint on the basis of the Standing Order without considering the allegations contained in the Complaint as to both personal jurisdiction and joinder. The full order from the District Court is nothing more than, "Plaintiff's [2] complaint is hereby DISMISSED WITHOUT PREJUDICE to re-file consistent with the Standing Order entered at ECF [17]." (Appx8).

The allegations pleaded in Wood's Complaint are sufficient to establish a *prima facie* case of personal jurisdiction. The Complaint alleges that the Defendants shipped infringing products to Pennsylvania residents, which supports personal jurisdiction in every court that has considered the issue. Therefore, the District Court erred as a matter of law in dismissing Wood's Complaint for a lack of personal jurisdiction.

Moreover, the District Court did not provide any reasoning as to why the allegations in the Wood's Complaint are not sufficient for joinder. While joinder is discretionary, a district court abuses its discretion when it applies the wrong legal standard to an issue, as the District Court did here when it based its ruling on the Standing Order without considering the facts of this specific case.

**I.**     **The District Court Erred as a Matter of law in Concluding There was a Lack of Personal Jurisdiction Despite the Allegations of Defendants' Actual Sales in Wood's Complaint.**

The District Court's application of the Standing Order's provisions regarding personal jurisdiction, without regard to the allegations in the Complaint, was erroneous as a matter of law. Further, the District Court abused its discretion by creating a prerequisite for making an allegation of actual sales upon information and belief which runs afoul to Rule 11 of the Federal Rules of Civil Procedure by requiring that a plaintiff bring "competent evidence" of each defendant's contacts with the forum, "including, if necessary, sales information or distribution locations" prior to filing a complaint and well before the opportunity for jurisdictional discovery. Fed. R. Civ. P. 11. (Appx4).

First off, the Copyright Act does not require a sale of an infringing product for there to be copyright infringement. Under the Copyright Act, infringement occurs, *inter alia,* when any of the copyright owner's exclusive rights are violated. 17 U.S.C. § 501(a) (infringer "violates any of the exclusive rights of the copyright

owner," which includes the right to "display the copyrighted work publicly" as provided in 17 U.S.C. § 106(5)).  Requiring a sale is something that is not in the Copyright Act.

Nonetheless, Wood alleged numerous times throughout his Complaint and the supporting documents that each Defendant made actual sales of infringing products to Pennsylvania customers through both arms-length and test-buy transactions. (Appx14-32). The Defendants did not present evidence regarding personal jurisdiction and therefore, at this stage, the allegations in the Complaint must be accepted as true. No court has found that a defendant's actual sales of infringing products into the forum state are insufficient to support personal jurisdiction. *See, e.g. American Girl, LLC v. Zembrka,* 118 F.4th 271 (2d Cir. 2024)*, cert. denied*, 145 S. Ct. 1130 (2025); *Herbal Brands, Inc. v. Photoplaza, Inc.,* 72 F.4th 1085 (9th Cir. 2023); *NBA Props. v. HANWJH*, 46 F.4th 614 (7th Cir. 2022), *cert. denied,* 143 S. Ct. 577 (2023); and *Louis Vuitton Malletier, S.A. v. Mosseri,* 736 F.3d 1339 (11th Cir. 2013.) Therefore, in dismissing Wood's Complaint for lack of personal jurisdiction without any discussion of these allegations, the District Court's order was in direct conflict with the established case law and evidentiary standards governing the exercise of personal jurisdiction over online sellers who have sold infringing products to consumers with the forum.

**A. The Court may Exercise Personal Jurisdiction Over Defendants Pursuant to 42 Pa. Cons. Stat. § 5322 and as Authorized by the Constitution.**

Personal jurisdiction normally entails a two-part inquiry. "A federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 436 (3d Cir. 1987)); Fed. R. Civ. P. 4(e). The exercise of this jurisdiction must also comport with constitutional due process. *Renner v. Lanard Toys*, 33 F.3d 277, 279 (3d Cir. 1994).

Pennsylvania state law, 42 Pa. Cons. Stat. § 5322(b) (the "Pennsylvania long-arm statute"), provides for jurisdiction "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b); *Marten*, 499 F.3d at 296; *Hammons v. Ethicon*, Inc., 240 A.3d 537, 548 (Pa. 2020). The Pennsylvania long-arm statute is, therefore, coextensive with the Due Process Clause. *Gentex Corp v. Abbott*, 978 F. Supp. 2d 391, 395 (M.D. Pa. 2013). Thus, the two-part inquiry becomes one, concerned only with the requirements of the Due Process Clause. *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co.,* 75 F.3d 147, 150 (3d Cir.1996) ("Pennsylvania's long-arm statute provides that its reach is coextensive with the

limits placed on the states by the federal constitution. We therefore look to federal constitutional doctrine to determine [a defendant's] susceptibility to personal jurisdiction in Pennsylvania.").

The Supreme Court has divided the constitutional analysis into two branches: general jurisdiction and specific jurisdiction. General jurisdiction or "all-purpose jurisdiction" applies where a defendant's contacts are so "continuous and systematic," "so constant and pervasive," as "to render [the defendant] essentially at home." *See, Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011). Individuals are subject to general jurisdiction where they are domiciled and corporations are subject to general jurisdiction where they are incorporated and where they maintain their principal place of business. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358–59 (2021). The Defendants are not at home in Pennsylvania, so general jurisdiction is not applicable.

Specific personal jurisdiction does not require that the defendant be at home in the forum state, but it does require a connection between the defendant's activities occurring in or directed towards the forum state and the claims asserted against the defendant – the claim must "arise out of or relate to" the defendant's contacts with the forum state. *Id.*

This Court has held that for an exercise of specific personal jurisdiction to satisfy due process, the defendant must have constitutionally sufficient 'minimum

contacts' with the forum and subjecting the defendant to the court's jurisdiction must comport with traditional notions of fair play and substantial justice. *Vetrotex Certainteed Corp.,* 75 F.3d at 150. The first requirement, "minimum contacts," is defined as "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Asahi Metal Indus. Co., Ltd. v. Superior Court of California,* 480 U.S. 102, 109 (1987) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985)). The contacts must "show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State." *See Ford Motor Co.,* 592 U.S. at 359.

The second half of the jurisdictional threshold requires that the exercise of personal jurisdiction comport with traditional notions of fair play and substantial justice" such that the defendant "should reasonably anticipate being haled into court in the forum." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).

**B. Caselaw Authorizes an Exercise of Personal Jurisdiction Over Sellers who use Online Marketplaces to sell Infringing Products to Consumers Within the Forum State.**

The Supreme Court issued most of its caselaw explaining specific personal jurisdiction before e-commerce became so prevalent and has yet to apply its general principles to a defendant selling products on third-party platforms like

Amazon. However, appellate and district courts are adjudicating cases involving products offered and sold on third-party platforms on a regular basis.

The only precedential Third Circuit case on personal jurisdiction over online sellers is *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 448 (3d Cir. 2003), which is over 20 years old and involved a seller on an individual website, not on an online marketplace. While this Court ultimately did not find personal jurisdiction in *Toys "R" Us*, the facts of that case are markedly different from those in this case. *Id.* In *Toys "R" Us*, representatives of Toys "R" Us purchased infringing goods from New Jersey, but the defendant shipped the goods to a Toys "R" Us employee in Spain. *Id.*, at 450. Unlike the Defendants in the present case, that defendant had never shipped nor offered to ship products into the forum, and in fact had structured its entire website in Spanish, listed prices in foreign currencies, and could not even accommodate a United States shipping address. *Id.* at 448. Because of these factual differences, *Toys "R" Us* is not instructive for the personal jurisdiction analysis currently at issue. *Id.*

Although the Third Circuit has yet to issue an opinion addressing personal jurisdiction over an online seller like the defendants in this case, four other circuits have and these courts are unanimous that sales into the forum state establish personal jurisdiction. In *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085 (9th Cir. 2023), the plaintiff brought suit in Arizona against New York residents who

were unauthorized sellers of the plaintiff's products through two Amazon storefronts. The Complaint alleged that the defendants sold products to Arizona residents "through the regular course of business," although the plaintiff was unable to allege the exact number of sales made to Arizona customers because the plaintiff did not have access to the defendants' sales data prior to conducting jurisdictional discovery. *Id.* at 1089. Based on the allegations in the Complaint, the Ninth Circuit held that personal jurisdiction was proper because, "if a defendant, in its regular course of business, sells a physical product via an interactive website and causes that product to be delivered to the forum, the defendant 'expressly aimed' its conduct at that forum." *Id.* at 1093.

In *NBA Props. v. HANWJH*, 46 F.4th 614 (7th Cir. 2022), *cert. denied*, 143 S. Ct. 577 (2023), the Seventh Circuit affirmed the District Court's entry of a default judgment against a Chinese seller exercising personal jurisdiction based on a single sale to a customer who was located in Illinois. As the Seventh Circuit stated, the defendant "shipped a product to the forum only after it had structured its sales activity in such a manner as to invite orders from Illinois and developed the capacity to fill them." *Id.* at 622.

To reach this conclusion, the Seventh Circuit acknowledged that "specific personal jurisdiction over an online retailer is not established merely because the retailer's website is available in the forum." *Id.* at 619. Rather it is necessary that

the retailer "'stand ready and willing to do business with' residents of the forum and then 'knowingly do business with' those residents." *Id.* (cleaned up). The Seventh Circuit found that the defendant's single sale in Illinois "certainly can be characterized as purposeful.  It established an online store, using a third-party retailer, Amazon.com.  Through this online store, it unequivocally asserted a willingness to ship goods to Illinois and established the capacity to do so.  When an order was placed, it filled the order, intentionally shipping an infringing product to the customer's designated Illinois address." *Id.* at 624.

In *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1357-58 (11th Cir. 2013), the Eleventh Circuit held that a nonresident defendant was subject to jurisdiction in Florida because the defendant had sold allegedly infringing goods to Florida residents through its website.

In *American Girl, LLC v. Zembrka,* 118 F.4th 271 (2d Cir. 2024), *cert. denied*, 145 S. Ct. 1130 (2025), the Second Circuit found that by accepting an order from a New York resident, the defendant was subject to personal jurisdiction even though the defendant cancelled the order after learning of the lawsuit and did not actually ship the infringing product into New York (a substantially weaker set of facts than those alleged and admitted in this case).  The Second Circuit held that, by transacting business in New York, the defendant "purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into

court there." *Id.* at 279. In fact, the Second Circuit concluded, the defendant's transaction of business in New York was a "quite strong" demonstration of the minimum contacts necessary to support personal jurisdiction. *Id.*

Within the Western District of Pennsylvania and other districts within the Third Circuit, multiple judges have found personal jurisdiction over sellers on Amazon. Nearly five years ago, Judge Schwab refused to set aside a default against online sellers on the basis of lack of personal jurisdiction. *Talisman Designs, LLC v. Dasani*, No. 20-cv-1084 (W.D. Pa. Oct. 13, 2020). Judge Schwab stated, "[c]ommerce just like this over the internet, even specifically through Amazon, has been found to support a finding that a Court can properly exercise personal jurisdiction over a China-based infringer, even if the infringer has no physical presence in the United States."

Earlier this year, Judge Stickman refused to vacate a preliminary injunction that the defendants challenged on the basis of lack of personal jurisdiction. *Chen v. Adediy*, No. 24-cv-1516, 2025 WL 1146534 (W.D. Pa. March 5, 2025). As Judge Stickman stated, "[Plaintiff] has made the requisite showing of minimum contacts needed for the Court to exercise personal jurisdiction over Defendants as they offer to sell and sell infringing products to consumers residing in the United States, including Pennsylvania residents in this judicial district, through Defendants'

online storefronts (e.g., Amazon.com, Wal-mart.com/Walmart, Alibaba.com)." *Id.* at 4 n.2.

Judge Bissoon issued a preliminary injunction in April of this year against defendants who argued they were not subject to personal jurisdiction of the court. *Shu v. Grand Di*, No. 24-cv-1643 (W.D. Pa. Apr. 11, 2025). Judge Bissoon found that the plaintiff had demonstrated the requisite showing of minimum contacts needed for the court to exercise personal jurisdiction over the defendants, relying on evidence of the defendants "offering to sell and selling infringing products to consumers residing in Pittsburgh." *Id*. at 10 n.3. Judge Bissoon explained that "Plaintiff's injury stems from such actions, and the Court sees no unfairness in subjecting [the defendants] to this jurisdiction given that they structured their online storefronts to serve consumers across the nation, if not the globe, including Pennsylvania." *Id.*

Judge Stickman also issued a preliminary injunction in April against defendants selling allegedly infringing products on online stores including Amazon who argued they were not subject to personal jurisdiction of the court. *Zhang v. AAGGO*, No. 25-cv-85, 2025 WL 1158909 (W.D. Pa. Apr. 21, 2025). Judge Stickman found personal jurisdiction because "Defendants made sales to Pennsylvania residents, and more specifically, residents within the Western District." *Id.* at *4. *See also BGSD, Inc. v. SpazeUp, LLC*, No. 5:23-CV-4855,

2024 WL 1619279, at *3 (E.D. Pa. Apr. 15, 2024) (authorizing personal jurisdiction based on an Amazon sale into Pennsylvania).

Thus, there is abundant caselaw showing a widespread acceptance of personal jurisdiction predicated upon allegations of actual sales to forum state customers across courts at both the district and appellate levels.

### C. Wood's Allegations of Actual Sales to Pennsylvania Consumers are Sufficient to Support Personal Jurisdiction.

Wood's Complaint and supporting documents allege personal jurisdiction predicated upon the Defendants' sales of infringing goods into Pennsylvania. Wood alleged shipment of the products into Pennsylvania five times throughout the Complaint – these allegations include, in pertinent part: "Defendants regularly conduct, transact, and/or solicit business in Pennsylvania and in this Judicial District, and upon information and belief, derive substantial revenue from their business transactions in Pennsylvania." ¶ 4; "Each Defendant … on information and belief, has sold and continues to sell illegal reproductions of the Thomas Wood Works to consumers within the United States, including Pennsylvania." at ¶ 24; "Each Defendant … has sold and continues to sell infringing products that violate Plaintiff's intellectual property rights in the Thomas Wood Works to consumers within the United States, including the Commonwealth of Pennsylvania." at ¶ 25; "Defendants, without any authorization or license, have knowingly and willfully pirated Plaintiff's Thomas Wood Works in connection with the … sale of illegal

products into the United States and Pennsylvania over the internet." at ¶ 33; "Defendants … have actually shipped … the Infringing Products to customers located within this Judicial District." at ¶ 34. (Appx14-32).

Thus, the Complaint adequately alleges that the Defendants have sold and shipped infringing goods to Pennsylvania customers, thereby personally availing themselves of the market and laws of Pennsylvania, and therefore have sufficient minimum contacts with the Commonwealth such that they should have reasonably anticipated being haled into court in this Judicial District. This action is centered around the Defendants' sale of products which infringe upon Wood's copyrights to Pennsylvania customers and therefore arises directly from the Defendants' minimum contacts with the forum. Given the foregoing considerations, this Court's exercise of personal jurisdiction over the Defendants comports with constitutional due process and therefore with the Pennsylvania long-arm statute.

With regard to the evidence that the Standing Order purports to require to support personal jurisdiction allegations, the District Court's standard conflicts with Rule 11 and with the standard employed by other courts. By requiring *evidence* of sales or distribution records at the pleading stage, prior to the opportunity for jurisdictional discovery, the District Court has set a standard that is impossible to meet and that conflicts with the express authorization in Rule 11 to

make allegations for which the plaintiff expects to gather evidence during discovery. *See* Fed. R. Civ. P. 11(b)(3).

Wood can view and capture the Amazon storefronts offering infringing products for sale, his counsel has ordered infringing products to be delivered into Pennsylvania, and he has alleged additional sales into Pennsylvania, but, like the plaintiff in *Herbal Brands,* he has no way of documenting the existence or quantity of such additional sales prior to conducting discovery as neither Amazon nor the infringing Chinese defendants will voluntarily provide that information. *Herbal Brands*, 72 F.4th at 1089 and 1087. Wood is not required to present evidence at the pleading stage, as the courts are instructed to take the factual averments of the Complaint as true prior to an evidentiary hearing. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

Therefore, under the applicable legal standards, Wood's allegations of actual sales to Pennsylvania customers readily surpass the threshold for a prima facie showing of personal jurisdiction over the Defendants. Accordingly, Wood respectfully submits that the District Court's order holding that the court lacked personal jurisdiction over the Defendants based on the Standing Order was an error of law.

## II. The District Court Abused Its Discretion by Restricting the Joinder of Defendants Based on Categorical Generalizations Rather Than on a Case-By-Case Basis.

Federal Rule of Civil Procedure 20 permits a plaintiff to join multiple defendants in one action "if any right to relief is asserted against them ... with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2)(A). The rule itself does not define these critical terms, but the Supreme Court explained that when considering whether claims arose from the same transaction, the inquiry looks for a "logical relationship" between the claims. *Moore v. New York Cotton Exch.*, 270 U.S. 593, 610 (1926). Courts have defined an "occurrence" as something that simply happens or appears and is not necessarily the product of joint or coordinated action. *Est. of Ware v. Hosp. of the U. of Pennsylvania*, 871 F.3d 273, 281 (3d Cir. 2017) *(quoting Carey v. Kerr-Mcgee Chem. Corp.* 60 F.Supp.2d 800, 805 (N.D. Ill. 1999)("As long as we give the word "occurrence" its ordinary meaning – "something that takes place; esp. something that happens unexpectedly and without design…"). S*ee also, Bose Corp. v. P'ships and Unincorporated Ass'ns Identified on Schedule "A,"* 334 F.R.D. 511, 516 (N.D. Ill. 2020); see also *Oakley, Inc. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A,"* Case No. 1:20-cv-05972, ECF No. 27 (N.D. Ill. Nov. 9, 2020) (defendants were working in a similar manner and during the same time period to sell infringing products and thus part of

the same occurrence of mass harm); *Loewe S.A., Inc. v. P'ships and Unincorporated Ass'ns Identified on Schedule "A,"* Case No. 1:20-cv-07185, ECF No. 26 (N.D. Ill. Dec. 18, 2020) (same).

The generous nature of joinder under Rule 20 is confirmed by its broad language. Many of the joinder rules allow joinder of claims arising out of the same "transaction or occurrence," but Rule 20 uniquely adds that the connection can arise from a "series of transactions or occurrences," rather than a single one. The phrase "same transaction, occurrence, or series of transactions or occurrences" simply requires a logical relationship, such as substantial factual overlap, a test that is easily satisfied here, as discussed below. *Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.,* 292 F.3d 384, 390 (3d Cir. 2002); *see also, Unique v. Claybaugh*, 712 F. Supp. 3d 1265, 1269 (N.D. Cal. 2024) (citing *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 870 (9th Cir. 2013)) ("For the purposes of the permissive joinder rule, claims arise out of 'the same transaction, occurrence or series of transactions or occurrences' if they have 'factual similarity'"). Courts construe Rule 20 liberally in the interest of "convenience and judicial economy" and allow joinder where it would provide the fairest and most efficient way for the plaintiff to seek relief for the harm alleged. *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 724 (1966); *Bose Corp.,* 334 F.R.D. at 513.

In the Third Circuit, a court that exercises its discretion in applying Rule 20 "must provide a reasoned analysis that comports with the requirements of the Rule and that is based on the specific fact pattern presented by the plaintiffs and claims before the court." *Hagan*, 570 F.3d at 157. In *Hagan*, the District Court denied the plaintiff's use of joinder based in part on the court's conclusion that the general logistics of the plaintiffs being incarcerated rendered joinder impractical. The District Court did not discuss whether the circumstances surrounding the specific plaintiffs in the case before it rendered joinder problematic in that specific case or identify any particular factual circumstances that disqualified them from joining. *Id.* at 150.

On appeal, this Court held that the District Court's denial of joinder based upon difficulties which are common in multiple-prisoner litigations, but that were not specific to the plaintiffs at issue, was an abuse of discretion. *Id.* at 156. The Court recognized the broad discretion that the District Court enjoys in allowing or denying joinder but stressed that the court must conduct a specific inquiry and may not rely on general assumptions. *Id.*

In the present action, the District Court dismissed Wood's Complaint via a one-sentence order that referred to the Standing Order, without any discussion or explanation. The Standing Order, of course, applies broadly to every Schedule A case and does not even attempt to account for the circumstances underlying

Wood's Complaint. The District Court did not explain its reasoning in light of the allegations in the Complaint about the relationship among the Defendants or the additional evidence that Wood submitted in response to the District Court's show cause order. (Appx57-129).

Because the District Court dismissed the Complaint based simply on the Standing Order, without considering the allegations in the Complaint and the evidence that Wood submitted, the District Court impermissibly based its decision purely on general assumptions. *Hagan*, 570 F.3d at 157. Accordingly, Wood respectfully submits that the District Court abused its discretion by denying joinder without conducting a case-specific analysis.

### A. The Factual Allegations of Defendants' Coordinated and Cooperative Efforts to Create a Secondary Infringing Marketplace as Alleged in the Complaint Amount to a Series of Transactions or Occurrences Sufficient to Join Defendants Under Rule 20(a)(1)(A).

If the District Court had conducted the required factual inquiry, it would have found that the allegations contained in Wood's Complaint and supporting documents were sufficient to warrant joinder. To support his contention that the Defendants' actions constituted a series of occurrences, Wood alleged in the Complaint that the Defendants have "cooperated, communicated, shared information, and coordinated their efforts in order to create an infringing marketplace operating in parallel to the legitimate marketplace of Plaintiff and

third parties authorized to sell products embodying Plaintiff's copyrighted works." (Appx18 ¶ 4(d)). These alleged efforts included: (1) "employing and benefitting from substantially similar paid advertising, marketing, and advertising strategies (e.g., search engine optimization or "SEO"), in order to make their online storefronts appear more relevant and target a consumer searching for products embodying [Wood]'s copyrighted works"; and (2) coordinating their supply chains and distribution networks to minimize cost and offer infringing products at a price substantially below the original. (Appx18-24 ¶¶ 4(d) and 13).

Furthermore, the record suggests that many of the Defendants share common ownership or are working in concert, although the Defendants have deliberately concealed their true identities and ownership making it impossible prior to discovery to determine the full extent of their relationship with each other at the pleading stage. (Appx29 ¶ 27). Therefore, prior to conducting discovery, it is impossible for Wood to determine whether the 54 defendants named in this case are actually controlled by one single operator, a handful of operators, or 54 separate operators. (Appx58).

Additionally, Wood's response to the order to show cause further detailed the Defendants' cooperation and connection. In the declaration supporting this response, Stanley D. Ference III provided testimony about his firsthand experience with seemingly unrelated e-commerce stores and how discovery often reveals that

they are in fact connected, with individuals or companies owning and operating numerous storefronts. (Appx132). Even prior to discovery, the connection of the defendants is often confirmed when one or two lawyers appear to represent large groups of the defendants. This common representation demonstrates that the defendants are collaborating and that joinder is in the defendants' interest as the cost to engage counsel is much lower when split among defendants. (Appx71). Ference further attested that if Wood were to sever the action, each of the 54 individual complaints would be identical except for the name of the defendant and the image from the defendant's online store. (Appx69-70).

Although some judges have held that infringers acting similarly but completely independently of each other are not engaging in a "series of occurrences" for purposes of joinder under Rule 20, s*ee, e.g., Estee Lauder Cosmetics Ltd. v. Partnerships and Unincorporated Associations Identified on Sched. A*, 334 F.R.D. 182, 187 (N.D. Ill. 2020), Wood's Complaint and supplemental response go beyond alleging independent parallel acts of infringement. The allegations and evidence described above establish that the Defendants did not merely sell similar infringing products on the same marketplaces but rather were only able to create and profit from their anonymous internet stores because of their coordinated efforts. Thus, the case law holding that

purely parallel conduct does not support joinder is inapplicable, and Wood properly joined the Defendants in this action. (Appx19 ¶ 4(d)).

In *Bose Corp. v. P'ships and Unincorporated Ass'ns Identified on Schedule "A"*, 334 F.R.D. 511, 516 (N.D. Ill. 2020)*,* the Federal Court for the Northern District of Illinois offered an additional rationale for the joinder of foreign defendants who are using their online storefronts to sell identical counterfeit products, but whose precise connections are outside the plaintiff's knowledge prior to discovery. The court in *Bose* held that it was likely that the defendants understood that their ability to profit through internet stores is enhanced as their numbers increase and therefore their intentional use of the same marketplace platforms, maintenance of similar or identical storefronts to take advantage of the anonymity and mass reach afforded by the internet, and the cover afforded by international borders to violate copyrights with impunity establishes a series of transactions or occurrences. *Id.* at 516.

Furthermore, while each Defendant's actions caused direct harm to Wood, the combined effect of the Defendants' coordinated actions functions as a multiplier and causes concurrent and indivisible harm to Wood and complicates enforcement of his rights in a way that the individual actions alone would not. (Appx68). Wood alleges multiple ways that he is harmed each and every time an individual infringes upon his copyrights, but the massive reputational harm occurs

and is so profound because of the sheer number of infringers and the secondary marketplace they collectively create. (Appx67-68). Single defendant enforcement in the face of the overwhelming number of infringement points of sale made possible by the unregulated and anonymous nature of the Internet is wholly ineffective and does not remedy the actual harm to a plaintiff caused by the crushing weight of all of the Defendants' simultaneous infringement. (Appx85-88). With each additional infringer, the exclusivity and value of Wood's works as well as his ability to thwart such infringement are further diminished. (Appx67). Thus, each Defendant relies on the continued infringement of the others because their expansive presence is what makes their individual infringement possible.

## B. Common Questions of law and Shared Operative Facts will Arise as to all Defendants in the Action as is Required by Rule 20(a)(1)(B).

The second requirement for joinder of multiple defendants under Rule 20(a)(2) is that at least one "question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(B). Wood alleged that the "Defendants have cooperated, communicated, shared information, and coordinated their efforts in order to create an infringing marketplace operating in parallel to the legitimate marketplace of Plaintiff and third parties authorized to sell products embodying Plaintiff's copyrighted works, including: employing and benefitting from substantially similar paid advertising, marketing, and advertising strategies (e.g.,

search engine optimization or 'SEO'), in order to make their online storefronts appear more relevant and target a consumer searching for products embodying Plaintiff's copyrighted works." (Appx19 ¶ 4(d)). Moreover, in any intellectual property case, the question of whether the plaintiff has a valid claim to ownership of the intellectual property in question is common to all defendants. *Doggie Dental, Inc. v. CDOFFICE*, 2:21-CV-00271 at 4 (W.D. Pa. 2021). Here, the relevant questions of fact and law with respect to each Defendant are virtually the same—whether Wood has valid copyrights, whether the Defendants' identical images infringed those rights, and Wood's right to damages. Indeed, the legal case against each Defendant is virtually identical save for the name of the Defendant. Thus, this second element for joinder under Rule 20(a)(2)(B) is readily satisfied.

### C. Allowing Wood to Join all 54 Defendants in one Action is not Only Permissible but is Preferable to Promote Convenience and Judicial Economy.

The central purpose of Rule 20 is to promote convenience and judicial economy and to expedite the resolution of disputes. *See* Fed. R. Civ. P. 20(a); *United Mine Workers,* 383 U.S. at 724. The Supreme Court has instructed the lower courts to employ a liberal approach to permissive joinder of parties in the interest of judicial economy: "Under the Rules, the impulse is towards entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *Id.*

Moreover, where a plaintiff is bringing nearly identical claims against numerous defendants, allowing the use of joinder provides the plaintiff with a meaningful chance at relief that would not be economically or logistically feasible otherwise and minimizes the burden on the court's docket. *Merch Traffic, LLC v. The Partnerships and Unincorporated Associations Identified on Schedule A*, No. 25-cv-1180 (ECF No. 36) (N.D. Ill. Apr. 17, 2025) (finding that joining 40 defendants was proper under Rule 20 because it would allow the plaintiffs to pursue relief without filing a series of multiplying cases, would minimize the burden on the court's docket, and did not risk prejudice to the defendants as they would each have an opportunity to defend against the plaintiff's claims).

Here, there are 54 Defendants named in this action and thus the efficiencies gained by allowing joinder are massive. Requiring Wood to sever this action would result in 54 separate complaints, 54 motions for a TRO, 54 motions for a preliminary injunction, 54 court rulings on the motions for a TRO, 54 preliminary injunction hearings, and 54 rulings on the motions for a preliminary injunction (with more duplication to follow). Not only would that sequence consume unnecessary time by Wood and the District Court, the financial burden on Wood would be so prohibitive as to effectively render relief unavailable, allowing the infringers to avoid any consequences.

Allowing the use of joinder is also generally more efficient and economical for the Defendants. Many defendants in Schedule A cases never appear to defend their piracy, recognizing that they have no legal defense to their infringement and choosing to allow the plaintiff to obtain a default judgment against them. (Appx58); *see, also, e.g., Aquapaw Brands LLC v. Fed Store et al.*, 2:23-CV-01460 (W.D. Pa. 2025); *Nifty Home Products, Inc. v. Laylaxy et al.*, 2:23-CV-00903 (W.D. Pa. 2023). These defendants are plainly not harmed by joinder. And for those defendants who do choose to appear and defend, they typically engage common counsel, rendering joinder more cost-effective for them. *See, e.g., Tanya Paget v. Amxyfbk*, No. 25-cv-1106 (W.D. Pa. 2025) (common counsel representing 176 defendants); *De Sousa et al., v. Moon Bay et al.,* No. 24-cv-1518 (W.D. Pa. 2024) (common counsel representing 17 defendants which were the only defendants to enter appearances). Under these circumstances, it is plainly more economic for all parties and for the court to join all claims in a single action rather than multiple virtually identical actions.

Finally, if any Defendant can make a compelling argument that it is prejudiced by joinder, the District Court can make an individual determination as to whether to sever that Defendant from the action. Therefore, joinder is actually more efficient and beneficial for all the parties and the court. Accordingly, the District Court abused its discretion by holding that Wood's complaint improperly

joined the Defendants based solely on the Standing Order without any review of the factual circumstances underlying this specific action. If the District Court had given the appropriate consideration to the factual circumstances underlying the present action, it would have determined that the joinder of the Defendants in this action furthers efficiency and judicial economy and is proper under Rule 20.

## CONCLUSION

Wood respectfully submits that the District Court erred as a matter of law by dismissing this action for lack of personal jurisdiction notwithstanding the allegations in the complaint that the Defendants sold and shipped infringing products to Pennsylvania customers. Wood respectfully submits that the District Court abused its discretion when it held that Wood's Complaint improperly joined the Defendants based on its Standing Order without considering the specific facts and circumstances alleged in the Complaint. Accordingly, Wood respectfully requests that this Court vacate the District Court's order and remand for further proceedings consistent with Third Circuit precedent.

Respectfully submitted,

Dated: November 13, 2025

/s/ Stanley D. Ference III
Stanley D. Ference III

FERENCE & ASSOCIATES LLC
409 Broad Street
Pittsburgh, Pennsylvania 15143
(412) 741-8400 – Telephone
(412) 741-9292 – Facsimile

*Attorneys for Plaintiff-Appellant*
 *Thomas Wood*

## COMBINED CERTIFICATIONS

**1.    CERTIFICATE OF BAR MEMBERSHIP**

I, Stanley D. Ference III, counsel for Thomas Wood, hereby certify pursuant Third Circuit Rule 28.3(d) to that I am a member in good standing of the bar of the Court of Appeals for the Third Circuit.

**2.    CERTIFICATE OF WORD COUNT**

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B) and Local Rule 32.1, I hereby certify that the foregoing brief contains 8,093 words as counted using the word-count feature in Microsoft Word, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2019 and a 14-point Times New Roman font.

**3.    CERTIFICATE OF IDENTICAL BRIEFS**

Pursuant to Local Rule 31.1(c), I certify that the text of the electronic and hard copy forms of this brief are identical.

**4. CERTIFICATE OF VIRUS CHECK**

Pursuant to Local Rule 31.1(c), I certify that a virus check of the electronic PDF version of this brief was performed using Viper Endpoint Security and according to that program no virus was detected.

Dated: November 13, 2025                         /s/ Stanley D. Ference III    

                                                  Stanley D. Ference III

No. 25-2340

# United States Court of Appeals
# for the Third Circuit

THOMAS WOOD,

*Plaintiff-Appellant,*

v.

EIAZUIKS, ET AL.,

*Defendants.*

On Appeal from the United States District Court
for the Western District of Pennsylvania
No. 25-cv-309 (Hon. J. Nicholas Ranjan)

**APPENDIX VOLUME I (Pages Appx1-Appx9)**

Stanley D. Ference III
FERENCE & ASSOCIATES LLC
409 Broad Street
Pittsburgh, Pennsylvania 15143
(412) 741-8400
courts@ferencelaw.com

*Attorneys for Plaintiff-Appellant
  Thomas Wood*

November 13, 2025

# TABLE OF CONTENTS

**Page**

## Volume I

"Schedule A" Case Standing Order ................................................................Appx1

Text Only Dismissal Order ...........................................................................Appx8

Notice of Appeal ..........................................................................................Appx9


## Volume II

District Court Docket Report ......................................................................Appx10

Complaint .....................................................................................................Appx14

Declaration of Thomas Wood .....................................................................Appx38

Declaration of Stanley D. Ference III .........................................................Appx46

Declaration of Dee Odell ............................................................................Appx53

Order to Show Cause ...................................................................................Appx55

Response to Order to Show Cause ...............................................................Appx57

    Exhibit 1:  Combating Trafficking in Counterfeit and Pirated Goods,
    Report to the President of the United States ..............................................Appx75

Declaration of Stanley D. Ference III
    in Support of Response to Order to Show Cause ....................................Appx130

    Exhibit 1:  Web page captures ...............................................................Appx133

    Exhibit 2:  Address search results..........................................................Appx181

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

In re:                                )
                                       )
"SCHEDULE A" CASES                     )      2:25-CV-800
                                       )
                                       )
                                       )

## "SCHEDULE A" CASE STANDING ORDER

There has been a noticeable uptick in "Schedule A" cases in this District. This has caused the Court to re-examine how it procedurally administers these cases. For the benefit of counsel and the parties in this case, the Court provides the following guidance.

## BACKGROUND

To begin with, as plaintiffs in Schedule A cases are right to point out, counterfeit sales appear to be a serious problem. For companies that hold valuable retail-based trademarks, copyrights, and patents, they risk the dilution of their intellectual property. So there is a need for many IP holders to be able to obtain meaningful relief, oftentimes against online foreign sellers who sell poor knock-offs.

On the other hand, it appears that Schedule A litigation has created a niche of frequent filers and a bar of plaintiff and defense-side attorneys. There is certainly nothing wrong with that. But this has led to gradual and oftentimes bizarre modifications from how normal litigation is conducted—very likely in order to make the litigation more efficient to pursue and resolve for the players.

By way of example, in nearly all of the Schedule A cases, the plaintiff preemptively requests to be excused from the Hague Convention service and translation requirements for foreign service—a request that is almost never even made in other cases against foreign defendants. This is often accompanied by a

Appx1

request for alternate service by email on defendants, without any attempts at conventional service. In other civil cases, this is rarely requested.

Similarly, there always seems to be an *ex parte* motion for a TRO, seeking to freeze all of the defendants' assets. This type of request is also unheard of in most civil cases. Certainly, in some non-Schedule A IP cases, plaintiffs move for an asset freeze. But this type of remedy isn't ordered *ex parte* and before there is even any evidence that the defendant has sought to move assets; and to grant such relief, there usually has to be discovery and a hearing, so that the asset freeze is narrowly tailored to the amount needed to satisfy a disgorgement award.[1]

Finally, as the Court has noted previously, there has been a distortion as to the rules and laws governing joinder and personal jurisdiction. *See Forcel Media Limited v. DecYi*, No. 25-750, 2025 WL 1665586 (W.D. Pa. June 12, 2025). Joining often hundreds of defendants on a Schedule, particularly in a case involving a number of disparate marks or copyrights, is likely to run afoul of Rule 20. And suing defendants without a sound basis as to their contacts into the forum/personal jurisdiction runs the risk of violating these defendants' due process rights.[2]

In sum, while there are important interests for IP holders at issue in Schedule A cases, many of the modifications to the traditional rules that have developed in this

---

[1] It appears that the reason for the *ex parte* TRO motion in Schedule A cases is to generate settlement leverage, as settlements appear to be reached based on a percentage of the frozen accounts. *See, e.g., Forcel Media Limited v. DecYi et al*, No. 25-750, ECF 10-4 at 5 (image of sellerdefense.cn website, discussing how various law firms determine the settlement amounts).

[2] There are more troubling aspects related to personal jurisdiction in Schedule A cases. Oftentimes, a defendant who might contest personal jurisdiction might not have the incentive to do so, because by the time it appears in the case, there is already a TRO asset freeze.

area of the law are extraordinary exceptions to the normal rules, and appear to have been simply a creature of the economics of the litigation.

### PROCEDURAL GUIDELINES

In light of the above, the Court provides the following procedural guidelines that it intends to employ in Schedule A cases so that the rules and law can be followed.

***First***, to satisfy Rule 20, each complaint shall consist of a single defendant or group of defendants acting under the same operator, and a separate filing fee shall be paid for each separate complaint. This comports with the typical IP case, where an IP holder sues a particular infringer for its specific conduct. If the marks, copyrights, or patents at issue are disparate and unrelated, then the complaints must be divided to include only related IP. One of the important reasons for this severance is that the Court anticipates that personal jurisdiction will be a defendant-specific inquiry, which examines the particular defendant's sales of the allegedly infringing product into the forum state. So joinder may be impractical, at least before personal jurisdiction is established, where "the claims against the defendants involve different facts" relating to personal jurisdiction. [3] *UN4 Prods., Inc. v. Does 1-15*, No. 17-2768, 2017 WL 5885779, at *2 (E.D. Pa. Nov. 29, 2017); *see also Blood v. Fed. Bureau of Prisons*, 351 F. App'x 604, 607 (3d Cir. 2009) (joinder impractical where it would "necessarily require a separate factual inquiry" into each plaintiff's claims). If

---

[3] This concern is amplified by a member of this Court's observation that personal jurisdiction may turn out to be a major issue throughout the litigation of Schedule A cases involving foreign defendants, even if defendants do not appear to contest personal jurisdiction. If a "[p]laintiff were to move for default judgment, the Court would hold an evidentiary hearing or otherwise require [the plaintiff] to develop an appropriate evidentiary record from which the Court could be assured of the validity of its judgment, which includes confirmation of personal jurisdiction." *Xie v. GUANHE Home essentials*, No. 25-265, 2025 WL 1039233, at *3 n.6 (W.D. Pa. Apr. 8, 2025) (Hornak, C.J.).

necessary, for the sake of efficiency, the Court will be open to consolidating related cases once it is satisfied that personal jurisdiction exists and the other consolidation factors are met (*e.g.*, that there is a logical relationship among the parties and the claims).

**Second**, to satisfy Rule 11, the complaint must plausibly plead allegations of personal jurisdiction, including contacts with the forum if specific jurisdiction is invoked.[4] The law is well-settled that simply being an online seller on Amazon isn't enough. And the law is also well-settled that that plaintiff cannot create personal jurisdiction by ordering a product to be shipped to the forum. So before the filing of the complaint, the plaintiff must have developed some evidence of *each* defendant's contacts with the forums, including, if necessary, sales information or distribution locations.[5]

---

[4] This includes any allegations of personal jurisdiction under the federal long-arm statute, Rule 4(k)(2).

[5] In some cases, plaintiffs have complained that this information is not readily available, and that they need some jurisdictional discovery. But that doesn't excuse Rule 11's threshold requirement that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." That said, if a plaintiff meets Rule 11's threshold requirement, the Court will certainly consider allowing jurisdictional discovery, on a case-by-case basis. *See Rockwell Automation, Inc. v. EU Automation, Inc.*, No. 21-1162, 2022 WL 1978726, at *12 (D. Del. June 6, 2022) ("Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous. However, a court should not permit discovery as a matter of course; before allowing jurisdictional discovery to proceed, the court must be satisfied that there is some indication that the particular defendant is amenable to suit in this forum. If a plaintiff does not come forward with some competent evidence that personal jurisdiction over the defendant might exist, a court should not permit jurisdictional discovery to proceed. To receive jurisdictional discovery, plaintiffs must claim that their factual allegations establish with reasonable particularity the possible existence of requisite contacts." (cleaned up)).

**Third**, the Court will not, as a matter of course, allow a plaintiff to dispense with ordinary service requirements, including foreign service requirements under the Hague Convention. There needs to be a particularized showing—which will likely be case specific and defendant specific—before alternate service is authorized. *D Squared Plant Traps LLC v. Guangdong Bixing Trading Co., LTD.*, 716 F. Supp. 3d 352, 357-58 (W.D. Pa. 2024) (Conti, J.) (no showing that the case fell within an exception under the Convention that would authorize an alternative form of service). Any motions for alternate service should explain what efforts have been made to discover each defendant's domicile and to effectuate service by usual means (including what efforts were undertaken to determine the address of each defendant and the validity of the address) and whether the form of alternate service requested is permitted by the Hague Convention given each defendant's domicile (and the factual basis for this). *See RJ Brands, LLC v. Hangdong Trading Ltd.*, No. 21-04747, 2021 WL 3206813, at *3 (D.N.J. July 28, 2021) (rejecting conclusory assertion that compliance with the default method under the Hague Convention is "too time-consuming, costly, and potentially fruitless"); *Luxottica Grp. S.p.A. v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, 391 F. Supp. 3d 816 (N.D. Ill. 2019). The Court would also note that to save costs, plaintiffs can always email defendants the waiver-of-service forms, which would obviate the need for Hague Convention service.

**Fourth**, the Court does not intend, as a matter of course, to grant *ex parte* TRO motions. *See Forcel Media Limited*, 2025 WL 1665586.[6] Because "[p]reliminary

---

[6] This is consistent with the undersigned judge's practices and procedures for TROs and preliminary injunctions. *See* Judge Ranjan's Practices and Procedures, Section II(l) ("If a complaint seeks a TRO or preliminary injunction, the Court will typically schedule a telephonic conference as soon as possible. The plaintiff should make all efforts to ensure that the defendant is served and has counsel, as the Court will rarely grant *ex parte* motions."), *available at*:

injunctive relief is an extraordinary remedy and should be granted only in limited circumstances[,]" the Court will not grant TRO and preliminary-injunction motions based on conclusory statements. *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700 (3d Cir. 2004) (cleaned up). The Court will not grant any TRO motions where there is not a sound basis that personal jurisdiction exists as to the defendant. The Court is also unlikely to grant any TRO motion to freeze online accounts absent some evidence that the defendant has transferred or is transferring assets to avoid judgment in the specific case, and also after a specific showing linking the amount of assets to the amount of disgorgement at issue. *See Wham-O Holding v. The Partnerships*, No. 24-12523, ECF 39 (N.D. Ill. Feb. 20, 2025) (declining to impose blanket asset freeze on assets beyond those derived from the sale of allegedly infringing products). A prejudgment asset restraint—let alone one requested without any notice to the defendant—is an "extraordinary measure" not "to be employed simply to secure a pot of money for later recovery of damages." *Jergenson v. Inhale Int'l Ltd.*, No. 22-2040, 2023 WL 167413, at \*5 (N.D. Ill. Jan. 12, 2023).

**Fifth**, because the *ex parte* TRO motion is usually the justification for granting a motion to seal, the Court is unlikely to seal any filings. If a motion to seal is filed, it must be supported by the grounds set forth in *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 673 (3d Cir. 2019).

**Sixth**, a filing of the complaint must be accompanied by a declaration from plaintiff's counsel that identifies any pending cases brought by the plaintiff(s) against any of the named defendants prior to this suit. The declaration must identify the case number(s), note whether the intellectual property at issue was the same as in

https://www.pawd.uscourts.gov/sites/pawd/files/Ranjan_Practices_Procedures_4_25.pdf

**Appx6**

this case, and describe the status and/or disposition of the other case(s) (*e.g.*, pending, settlement, dismissal, or other disposition).

SO ORDERED.

BY THE COURT:

*/s/ J. Nicholas Ranjan*
United States District Judge

# Dismissal Order

| 07/03/2025 | 18 | ORDER. All docket entries shall be unsealed until further order of Court. Plaintiff's 2 complaint is hereby DISMISSED WITHOUT PREJUDICE to re-filed consistent with the Standing Order entered at ECF 17 . Signed by Judge J. Nicholas Ranjan on 7/3/2025. Text-only entry; no PDF document will issue. This text-only entry constitutes the Order of the Court or Notice on the matter. (pak) (Entered: 07/03/2025) |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THOMAS CONRAD WOOD,

              Plaintiff,

v.

EIAZUIKS, et al.,

              Defendants.

Civil Action No.

25-cv-800

### NOTICE OF APPEAL

Notice is hereby given that Plaintiff, Thomas Conrad Wood, hereby appeals to the United States Court of Appeals for the Third Circuit from the Order entered on June 13, 2025 (ECF No. 13) denying, *inter alia*, the requested Temporary Restraining Order, the text only Order entered July 3, 2025 (ECF No. 18) dismissing the case, and the Court's standing order (ECF No. 17) as referenced in the text only Order.

              Respectfully submitted,

Dated: July 14, 2025

      /s/ Stanley D. Ference III
      Stanley D. Ference III
      Pa. ID No. 59899
      courts@ferencelaw.com

      FERENCE & ASSOCIATES LLC
      409 Broad Street
      Pittsburgh, Pennsylvania 15143
      (412) 741-8400 – Telephone
      (412) 741-9292 – Facsimile

      Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 13, 2025, I caused a copy of the foregoing documents to be served by electronic means, via the Court's CM/ECF system, on all counsel registered to receive electronic notices.

Dated:  November 13, 2025                        /s/ Stanley D. Ference III
                                                            Stanley D. Ference III